UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


In re: J. MARZINE WOOD
KRISTINA F. WOOD,                                        Case No. 11-11807

        Debtors.                                         HON. AVERN COHN
_____/

DONALD COLE and REBECCA
COLE,

        Plaintiffs,                                      Bankr. Case No. 08-33538
                                                         Adv. Pro. No. 08-03202
vs.

J. MARZINE WOOD and KRISTINA
F. WOOD,

        Defendants.
_____/

**MEMORANDUM AND ORDER AFFIRMING THE BANKRUPTCY COURT**[1]

**I. Introduction**

This is an appeal from an adversary proceeding in a Chapter 13 bankruptcy

case.  Plaintiffs Donald and Rebecca Cole (the Coles) filed an adversary complaint

seeking a declaration that debt allegedly owed to the Coles by Defendants/Debtors J.

Marzine and Kristina F. Wood (the Woods) was the result of "actual fraud" and thereby

non-dischargeable under 11 U.S.C. § 523(a)(2)(A).  Following a two-day trial, the

bankruptcy court held that the Coles failed to satisfy their burden to prove fraud.  The

_____

[1]Upon review of the parties' papers, the Court finds the matter appropriate for
decision without oral argument.  See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

Coles[2] appeal.  For the reasons that follow, the decision of the bankruptcy court will be affirmed.

## II.  Background

In October 2008, the Woods built a house (the Property) located in Genesee Township, Michigan.  The Woods moved into the Property and, in the summer of 2000, Mr. Wood noticed a crack in the southeastern wall of the basement.  He contacted AnchorTech Foundation (AnchorTech), who found that the crack had been caused by unsuitable soil conditions beneath the Property, specifically a mixture of silt and excess water.  AnchorTech eventually installed a set of helical piers in the southeast corner of the Property.  The piers were designed to stabilize that particular corner of the foundation.  The Woods testified that they did not experience any other problems with the basement or the foundation once the piers were installed.

In November 2000, Mr. Wood filed a lawsuit in Genesee Circuit Court against several individuals involved in the original construction of the Property.  Mr. Wood's first amended complaint included a request for future damages.  The parties settled and the lawsuit was dismissed.  Then, in July 2001, AnchorTech received a request from ABR Construction Consultants for a proposal to install full-perimeter helical piers.  These piers were to be installed to stabilize the entire foundation and not just the southeast corner.  AnchorTech provided the proposal to ABR Consultants; the proposal was never implemented.

---

[2]As noted by the bankruptcy court, Rebecca Cole died during the pendency of the adversary proceeding.  To avoid confusion, the Court, similar to the bankruptcy court, refers to plaintiffs as the Coles.

In July 2002, the Woods put the Property up for sale.  As required in Michigan, the Woods signed and completed a Seller's Disclosure Statement.  The form asked whether the Woods knew of "[s]ettling, flooding, drainage, structural, or grading problems" and included three responses to select from: "unknown," "yes" or "no."  The Woods did not select any of these responses.  Instead, the Woods attached a handwritten statement to the disclosure statement, which read:

> Piers put under footings in front of house due to soil content.  Piers were driven down to solid granite and clamped to foundation wall for stabilized support.  Piers are warrantied for the life of the house through AnchorTech.

In the fall of 2002, the Coles reviewed the disclosure statement and made an offer to buy the Property, which the Woods accepted.  The Coles did not have the Property inspected.  The Coles moved into the Property on October 30, 2002.  Several weeks later, Mr. Cole noticed that the basement's sump pump did not work, and several months later, that the sump pump was discharging not only excess water but silt from beneath the Property.  Cracks formed in the basement's southwest corner through the summer of 2003 until the spring of 2004 when a wall in the southwest corner cracked.  Mr. Cole then contacted AnchorTech and Hanson Engineering (Hanson) to diagnose and fix the problem.  Throughout 2004 and 2005, AnchorTech and Hanson worked together to raise the house and replace the entire foundation.

On August 29, 2008, the Woods filed a petition for Chapter 13 bankruptcy.  On November 21, 2008, the Coles filed an adversary complaint in the bankruptcy case.  The Coles alleged that the Woods were liable for "actual fraud" in the sale of the Property from the Woods to the Coles.  The Coles based their claim on alleged false representations and material non-disclosures in the Seller's Disclosure Statement

regarding the condition of the Property's foundation.  On the basis of this "actual fraud,"
the Coles sought a determination that the losses the Coles incurred in repairing the
Property were non-dischargeable debt pursuant to the "actual fraud" discharge
exception of 11 U.S.C. § 523(a)(2)(A).

As noted above, the bankruptcy court found that the Coles did not establish by a
preponderance of the evidence that the Woods had committed in actual fraud in the
sale of the Property.  First, the bankruptcy court credited the Woods' testimony that they
did not know of continuing problems with the basement when they sold the Property to
the Coles.  Second, the bankruptcy court found that Mr. Wood's request for future
damages in his state court lawsuit was unpersuasive evidence that the Woods knew of
continuing problems.  Third, the bankruptcy court found that the Woods had no statutory
duty to disclose the lawsuit in the Seller's Disclosure Statement.  The bankruptcy court
held therefore that the alleged debt was not nondischargeable under section
523(a)(2)(A).

The Coles appealed.

### III.  Standard of Review

The district court reviews factual findings made by a bankruptcy court for clear
error, which requires the appellant to demonstrate "the most cogent evidence of mistake
of justice."  Wesbanco Bank Barnesville v. Rafoth (In re Baker & Getty Fin. Servs.), 106
F.3d 1255, 1259 (6th Cir. 1997).  See also Fed. R. Bankr. P. 8013.  Conclusions of law
are reviewed de novo.  Simon v. Chase Manhattan Bank (In re Zaptocky), 250 F.3d
1020, 1023 (6th Cir. 2001); see also Lopez v. Donaldson (In re Lopez), 292 B.R. 570,
573 (E.D. Mich 2003).  The district court reviews a bankruptcy court's evidentiary rulings

for abuse of discretion, which is defined as "a definite and firm conviction that the trial

court committed a clear error of judgment." Trepel v. Roadway Express, Inc., 194 F.3d

708, 716-17 (6th Cir. 1999).


### IV.  Analysis

The disposition of this appeal turns on the question of intent to deceive.  That is,

whether the whether the bankruptcy court erred in finding that the Coles did not provide

evidence sufficient to infer an intent to deceive on the part of the Woods.  The remaining

issues the Coles raise, whether the bankruptcy court erred in excluding two of the

Coles' proposed exhibits and whether the bankruptcy court erred in finding that the

Woods had no duty to disclose Mr. Wood's state court lawsuit are briefly addressed.

### A.  Whether the Woods Evidenced an Intent to Deceive

Section 523(a)(2)(A) of the Bankruptcy Code provides that a debt will not

discharged in a bankruptcy proceeding if the debt was "obtained by false pretenses, a

false representation, or actual fraud" on the part of the debtor.  11 U.S.C. §

523(a)(2)(A).  The Coles have the burden of proving actual fraud by a preponderance of

the evidence.  See Grogan v. Garner, 498 U.S. 279 (1991).

To establish actual fraud, the Coles must show a course of conduct intended to

deceive, justifiable reliance and proximate causation.  See Fields v. Mans, 516 U.S. 59,

69 (1995).  Intent to deceive may be inferred from a "[r]eckless disregard for the truth or

falsity of a statement combined with the sheer magnitude of the resultant

misrepresentation."  In re Copeland, 291 B.R. 740, 786 (Bankr. E.D. Tenn. 2003)

(citations omitted).  Nevertheless, "[i]f there is room for an inference of honest intent, the

question of nondischargeability must be resolved in favor of the debtor." In re Bird, 224 B.R. 622, 627 (Bkrtcy. S.D. Ohio 1998).

The bankruptcy court found that the Coles provided "no evidence . . . about the Defendants' knowledge of the conditions of the basement or foundation in 2002 at the time they completed seller's disclosure statement." Bankr. Opinion at p. 18. In reaching its conclusion, the bankruptcy court relied upon testimony from the Woods that they had not experienced any problems with the Property since the repairs in 2000 and that they were unaware of continuing problems with the Property at the time they sold the Property in 2002. The bankruptcy court also rejected the assertions that: (1) engineers had found continuing problems with the Property, indicating that the Woods knew of continuing problems; and (2) Mr. Wood's request for future damages indicated that the Woods knew of continuing problems. The bankruptcy court held that the Woods had no knowledge of continuing problems with the foundation and because intent to deceive presupposes knowledge of falsity, the Woods could not have intended to deceive the Coles. The Coles therefore failed to establish one of the elements of the actual fraud discharge exception.

On appeal, the Coles argue that the bankruptcy court's finding was clearly erroneous because the bankruptcy court failed to refer to certain key pieces of testimony from the Woods. This testimony, excerpted at length in their brief, indicates that the Woods were aware of a proposal from AnchorTech to install full-perimeter helical piers and a letter from another contractor suggesting that the basement walls were "overloaded." The testimony further indicates that the Woods discussed with their lawyer whether to disclose these documents in the Seller's Disclosure Statement. The

Coles argue that the import of these documents is that continuing problems existed with the Property. The fact that the Woods were aware of and discussed these documents therefore, according to the Coles, proves that they had the requisite knowledge of falsity.

The bankruptcy court based its finding on the entirety of the testimony presented at trial, including the testimony excerpted by the Coles. It was not necessary for the bankruptcy court to have expressly referred to the excerpted testimony in order to have considered that testimony in reaching its finding. The bankruptcy court listened to the testimony of the Woods and credited their testimony that they had no problems with the basement after 2000 and believed that no problems existed or would occur when they sold the Property in 2002. In their testimony, the Woods explained that no one informed that further repairs were necessary and that, although it was possible for problems to resurface, the resurfacing of problems could not be stated with certainty. The bankruptcy court chose to credit the Woods's explanation for their actions.

When the bankruptcy court bases its finding on a credibility determination, this Court must give "due regard" to the opportunity of the bankruptcy court to judge the credibility of witnesses firsthand. See Fed. R. Bankr. P. 8013. Considering that significant weight must be accorded to the finding and that the burden of proof rests with the Coles, the Court is satisfied that the bankruptcy court reasonably found that insufficient evidence of knowledge had been presented and that the Woods therefore did not intend to deceive the Coles. Although the Woods's discussions with an attorney permit an inference of knowledge, they also permit an inference that the Woods wanted to confirm that they had no obligation to disclose what they honestly believed was a

remote possibility of problems.  Having reviewed the record, it is entirely plausible to find that the Woods acted with honest intent when they disclosed what they did, even if a more cautious person would have disclosed more than the Woods did.  Because it is as least as likely that the Woods acted with honest intent than they did with deceptive intent, the bankruptcy court did not clearly err when it chose not to infer an intent to deceive from the evidence presented at trial.  The Coles' really ask the Court to evaluate the evidence anew and come to a contrary conclusion.  That, however, cannot be done on appeal.  Given that the record supports a finding of no intent to deceive, the bankruptcy's finding was not clearly erroneous.

In addition, the Coles argue that the Woods made false statements in their Seller's Disclosure Statement.  According to the Coles, the Woods falsely stated that their sump pump was working and that permits had been obtained for the repairs performed in 2000.  There is no evidence in the record, however, to suggest that the Woods knew either of these statements to be false at the time they were made, even if the statements were, in fact, false.  Thus, the Coles cannot prevail on this argument.

## B.  Whether the Woods Had a Duty to Disclose Mr. Wood's State Court Lawsuit

The Michigan Seller Disclosure Act requires that a seller of real estate make certain disclosures regarding the condition of the real estate being sold.  M.C.L. § 565.957 provides the actual disclosure form to be signed and completed under the Act. "The statutory form requires and provides, in part, that the seller answer all questions and report known conditions affecting the property."  Bergen v. Baker, 264 Mich. App. 376, 385 (2004).  The statutory form requires, in particular, that a seller disclose whether he or she is aware of any "[s]ettling, flooding, drainage, structural or grading

problems."  M.C.L. § 565.957.  If the seller answers in the affirmative, then the form

requires him or her to "please explain."  Id.  Additionally, the statutory form requires that

a seller disclose "[a]ny pending litigation that could affect the property or the Seller's

right to convey the property."  Id.  If the seller answers this question in the affirmative,

then the statutory form again requires that he "please explain."  Id.

Here, the bankruptcy court found that the Seller Disclosure Act did not require

the Woods to disclose Mr. Wood's then-pending state court lawsuit.  The bankruptcy

court based its finding on testimony from Mr. Woods that the state court lawsuit had

been brought against individuals assisting in the original construction of the Property in

1998 for the costs that the Woods sustained in repairing the Property in 2000.  The

bankruptcy court found that even if the lawsuit was "information about the property," it

"did not involve a continuing condition of the Property."  The bankruptcy court then

concluded that because the Seller Disclosure Act imposes no duty to disclose

information not related to a condition of a property, the Woods were under no duty to

disclose the lawsuit.

The Coles argue that the Woods were under a duty to disclose the lawsuit.  The

Coles refer to the portion of the statutory disclosure form, reading:  "This statement is a

disclosure of the condition and information concerning the property, known by the

seller."  The Coles argue that this language creates an absolute duty to disclose not

only a seller's awareness of the present condition of a property but, more generally, a

seller's awareness of "information concerning the property."  Because the lawsuit

contains within it "information concerning the property," it should have been disclosed

and its nondisclosure gives rise to a violation of the Seller Disclosure Act.

The Court agrees with the bankruptcy court's finding that the Woods had no duty to disclose the state court lawsuit.  The issue of whether the Woods had a duty to disclose the lawsuit raises both a question of law and a question of fact.  The question of law raised is whether the duty created by the Seller Disclosure Act is a duty to disclose information related to a condition of a property or, more generally, information concerning a property.  The question of fact raised is whether Mr. Wood's state court lawsuit falls within the duty created by the Seller Disclosure Act, how ever that duty is defined.

Turning to the question of law, the Seller Disclosure Act requires that the seller complete the disclosure form provided at M.C.L.§ 565.957 with accuracy and honesty. To the degree that a question on the disclosure form touches upon a particular condition of the property or particular information concerning the property, the seller has a duty to disclose the condition or information to the degree indicated by the question on the disclosure form.  The Court may not impose on a seller a duty to disclose beyond what is plainly required by the statutory disclosure form.  See Wallace v. Stawiarski, Case No. 256253, 2006 WL 120429 at *1 (Mich. App. 2006) (holding that defendants had no duty to disclose whether the property was located in a flood zone because the disclosure form did not specifically require a seller to state whether the property was located in a flood zone).  Thus, the Court agree with the bankruptcy court's similar conclusion.

Turning now to the question of fact, the disclosure form does not require a seller to disclose any pending litigation concerning a property but only those "that could affect the property or the Seller's right to convey the property" (emphasis added).  The

language "could affect" reflects the statute's concern with disclosure of lawsuits related only to the present condition of the property.  As the bankruptcy court found, however, Mr. Wood's lawsuit related only to a previous condition of the property.  Thus, the bankruptcy court did not clearly err in concluding that the Seller Disclosure Act did not require disclosure of Mr. Wood's lawsuit.

**C.  Whether the Coles's Proposed Exhibits 9, 12 and 22 Were Wrongly Excluded**

As a final issue on appeal, the Coles argue that the bankruptcy court erred in ruling on an evidentiary issue.  During trial, the Coles attempted to introduce into evidence proposed exhibits 9, 12 and 22.  Each of these proposed exhibits is a letter from ABR Consultants to the law firm that represented Mr. Wood in his state court lawsuit.  One of the letters expressed concerns that "the basement walls at the Wood home are way overloaded."  The other letters express similar concerns.

Counsel for the Coles attempted to enter the letters into evidence at various points during his cross-examination of Mr. Wood.  The bankruptcy court held each of the letters to be inadmissible hearsay.  In so doing, the bankruptcy court rejected the grounds for admissibility offered by the Coles, that the letters were admissions by the agent of a party opponent and therefore admissible under Federal Rule of Evidence 801.

On appeal, the Coles argue that the letters were not being offered for the truth of the matter asserted but to show that Mr. Wood was aware of their contents.  However, as the Woods point out, the Coles did not raise this ground for admissibility at trial.  The Coles only raised the grounds that the letters were admissions by the agent of a party-opponent, and the bankruptcy court's evidentiary ruling concerns only those

grounds.  Although the Coles noted in passing that the purpose of the letters was to show Mr. Wood's awareness of problems with the Property, the Coles made no attempt to obtain a ruling on these grounds.  By failing to obtain such a ruling, the issue is waived.

Because of the waiver, the Court reviews the bankruptcy court's exclusion of the proposed exhibits for plain error.  See United States v. Seymour, 468 F.3d 378, 387 (6th Cir. 2006) ("His failure to raise below this ground for admissibility means that we review the district court's evidentiary ruling for plain error.").  To show that the bankruptcy court committed plain error, the Coles must show, among other things, that the error resulted in a fundamental miscarriage of justice.  See Finch v. Monumental Life Ins. Co., 820 F.2d 1426, 1432 (6th Cir. 1987).

Here, it cannot be said that the bankruptcy court's evidentiary rulings caused a miscarriage of justice.  The Coles claim that the exhibits would have "show[n] what it said and that Mr. Wood knew what it said" but they fail to indicate what it is that the letters would have shown Mr. Wood to know and, more importantly, how such knowledge on the part of Mr. Wood would have affected the bankruptcy court's final analysis.  Moreover, even if a hearsay exception did apply, it is not certain the Coles would have been able to authenticate the letters.  Thus, the bankruptcy court did not commit plain error and its evidentiary rulings must stand.

### V.  Conclusion

The bankruptcy court considered all of the evidence to reach the conclusion that the Coles did not prove by a preponderance of the evidence that the debt allegedly owed by the Woods should be non-dischargeable under 11 U.S.C § 523(a)(2)(A).  The

bankruptcy court's careful decision was legally sound and in no way clearly erroneous.

Accordingly, the decision of the bankruptcy court is AFFIRMED.

     SO ORDERED

                                       S/Avern Cohn
                                       AVERN COHN
                                       UNITED STATES DISTRICT JUDGE

Dated:  September 16, 2011

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, September 16, 2011, by electronic and/or ordinary mail.

                                       S/Julie Owens
                                       Case Manager, (313) 234-5160